# The Stone Printing and Manufacturing Company

## v.

## Charles W. Dogan

Record No. 840896

September 4, 1987

Present: All the Justices

164

*Dudley F. Wood (Carroll D. Rea; Woods, Rogers & Hazlegrove,* on briefs), for appellant.

*John S. Edwards (Martin, Hopkins, Lemon and Carter, P.C.,* on brief), for appellee.

WHITING, J., delivered the opinion of the Court.

In this appeal, we decide whether a retired employee has established a right to the continuation of life insurance coverage after his retirement.

Charles W. Dogan worked for the Stone Printing and Manufacturing Company (Stone) for 50 years until his retirement in 1969. During the time he was an employee, Stone covered Dogan under a group life insurance policy. Both the policy and the company's employee manual stated that the insurance benefits would terminate upon termination of employment. Despite the termination language, Stone continued Dogan's life insurance in effect from his 1969 retirement until August 1981. At that time, the company decided that it could no longer afford to continue the coverage. Dogan sued, claiming that he had a right to the continuation of the insurance coverage until his death or to recovery of $8,500, which was the face value of the policies. The trial court ruled in Dogan's favor and entered judgment for $8,500.

In his motion for declaratory judgment Dogan contended that "[i]n discontinuing the plaintiff's life insurance benefits, the defendant breached the terms and conditions of the plaintiff's vested retirement rights and benefits." Thus, the theory on which Dogan proceeded was traditional breach of express or implied contract.

The trial court found that there was no breach of contract in this case.[1] According to the trial court, the language of the insurance policy and of the employee handbook would have controlled the matter except for the fact that Stone continued Dogan's insurance coverage for 12 years after his retirement.

The trial court also found, however, that because the coverage did not terminate upon Dogan's retirement, the question whether it could ever thereafter be terminated involved consideration of the doctrine of "promissory or equitable estoppel." The trial court concluded that it would be unconscionable to permit Stone to terminate the insurance coverage that Dogan had come to rely upon as part of his retirement.

Our resolution of the following two of Stone's assignments of error makes our consideration of the remaining assignments unnecessary. These two assignments are paraphrased as follows:

1. Whether the doctrine of promissory estoppel is part of the law in Virginia;

2. Whether there was sufficient evidence to warrant the application of the doctrine of promissory estoppel.[2]

The dispositive question in this appeal is whether the evidence supports a finding of promissory estoppel. In addressing this question, we assume without deciding that the doctrine of promissory estoppel applies in Virginia. Even so, we conclude that the evidence fails to support the use of that doctrine in this case.

Restatement (Second) of Contracts § 90(1) (1981) provides that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee . . . and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

---

[1] Dogan did not assign cross-error to the trial judge's rulings on his claims of contractual coverage. His notation of these matters as issues in his brief in opposition to granting the appeal cannot be construed as assignments of cross-error in the face of our explicit mandate that "assignments of cross-error . . . not then assigned will [not] be noticed by this Court." Rules of Court 5:18. Therefore, we will not further consider those rulings by the trial court.

[2] In addition to these assignments of error, Stone attempted in his brief and in oral argument to establish that declaratory judgment was not the proper vehicle for resolving this dispute. He raised that issue for the first time on this appeal. It is, therefore, not properly before the Court. Rules of Court 5:25.

Significantly, any recovery under this doctrine assumes the existence of the threshold fact that a promise has been made.

Because Dogan prevailed below, we view the facts in the light most favorable to him. The facts concerning the making of a promise are as follows: Dogan testified that this life insurance coverage was "an incentive . . . to keep people there so that they would be content with the company . . . would not leave and go to work somewhere else." His enigmatic response to the leading question of, "Is this one reason you stayed?" was, "This is the main reason why I stayed there, . . . because I though it was worth giving my time and my somewhat little talent I might have had with the organization." The only representations of Stone to Dogan were described by Dogan as conversations he had with Maclean Walters, a company official, "probably in the 1960's [prior to his retirement when Walters] seemed to think that I would still have that coverage." After Dogan's retirement, Dogan said Walters told him more than once, "I would have nothing to worry about." Walters testified that he had several conversations with Dogan both before and after Dogan's retirement in which he merely responded in the affirmative to Dogan's questions of whether his life insurance was still in force and told Dogan that as far as he knew there were no plans to change the company policy of keeping it in force.

In our opinion, Walters made no promise. He simply told Dogan "he had nothing to worry about," that he thought Dogan would still have the coverage after retirement, and that he knew of no plans to change the company policy of keeping the insurance in force. The most favorable construction we can give Dogan's description of Walters' statements is that of an assurance that Walters knew of no plan to discontinue the insurance coverage after Dogan retired, but Walters' statements cannot be tortured into a promise to continue that insurance after Dogan's retirement.

Further, at the time Stone told Dogan that the coverage would not continue, Dogan suffered no loss. While Dogan undoubtedly, due to Walters' assurances, anticipated that life insurance benefits would be paid upon his death, Dogan had not sufficiently changed his position after retirement to establish an acceptance of the offer before it was revoked. *See Rennie & Laughlin, Inc.* v. *Chrysler Corp.*, 242 F.2d 208 (9th Cir. 1957). Dogan's borrowing against his other life insurance policy was not

a sufficient change of position. He got the money from that loan and could have kept the Stone group policy simply by paying the future premiums himself. ·

■ Moreover, Dogan cannot show that the failure to enforce the promise would result in an injustice to him because he had the right upon being notified of the proposed discontinuance of the coverage to continue the coverage by paying the premiums himself and thus avoid the loss. *See* Boyer, *Promissory Estoppel: Requirements and Limitations of the Doctrine*, 98 U. Pa. L. Rev. 459, 485 (1950).

In light of the foregoing, we hold that the trial court erred in granting relief on the basis of promissory estoppel. We will, therefore, reverse the judgment of the trial court and enter final judgment here for the defendant.

*Reversed and final judgment.*