**Hung P. NGUYEN, Plaintiff–Appellant,**

v.

**CNA CORPORATION, Defendant–Appellee.**

**No. 94–1341.**

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 29, 1994.

Decided Jan. 20, 1995.

**ARGUED:** John William Toothman, John W. Toothman, P.C., Alexandria, VA, for appellant. Deborah Brand Baum, Shaw, Pittman, Potts & Trowbridge, Washington, DC, for appellee. **ON BRIEF:** Teresa L. Diaz, Shaw, Pittman, Potts & Trowbridge, Washington, DC, for appellee.

Before LUTTIG and WILLIAMS, Circuit Judges, and CHASANOW, United States District Judge for the District of Maryland, sitting by designation.

Affirmed by published opinion. Judge WILLIAMS wrote the opinion, in which Judge LUTTIG and Judge CHASANOW joined.

## OPINION

WILLIAMS, Circuit Judge:

Appellant Hung P. Nguyen filed this diversity action against his former employer, the CNA Corporation (CNA), after CNA refused Nguyen's request to return to employment with the company following a leave of absence. In his two-count amended complaint, Nguyen alleged the following: (1) that CNA's employee manual, alone or in combination with other statements, created an implied employment contract under which CNA could only refuse Nguyen's return from a leave of absence for "just cause," which CNA did not have under the facts presented; and, (2) in the alternative, that promissory estoppel barred CNA from refusing Nguyen's request to return from leave. CNA moved for, and the district court granted, summary judgment on both the contract and promissory estoppel claims. Nguyen now appeals, challenging not only the district court's reasoning on the merits but also a number of alleged procedural mistakes the district court made in reaching its decision. We conclude that the district court made no errors in granting summary judgment in CNA's favor and affirm the decision below.

### I.

CNA, formerly known as the Center for Naval Analysis, is a private military research organization that specializes in the research of defense-related issues for the United States Navy. In March of 1989, Nguyen began working for CNA as a Research Analyst, where his primary initial responsibility was researching the Soviet Union's naval capabilities. In this capacity, Nguyen participated in a CNA research project in which he studied Soviet military press publications to determine whether the Soviet Union possessed the technological capabilities to detect nuclear submarines from orbiting space satellites. In August of 1991, Nguyen circulated to his superiors the product of his studies: an essay in which he posited that the Soviets

were more proficient at detecting nuclear submarines in deep ocean waters from space than the Navy had thought possible up to that point.

The parties view the events following Nguyen's circulation of the report very differently. Nguyen maintains that certain superiors were upset about the paper because of its potential negative impact on continued funding for the United States submarine fleet. Nguyen argues that this fear on the part of certain CNA superiors created the subsequent employment problems that beset Nguyen at CNA. CNA contends, however, that whatever the implications of the paper, the overall project on which Nguyen was working—studies of the Soviet military press to determine Soviet military advances—had come to a conclusion around the time the paper was circulated, and CNA further asserts that Nguyen was having trouble performing on other research projects and in other roles with CNA.

Both parties agree that in January of 1992, Nguyen requested and was granted a four-month leave of absence beginning in March of that year to finish a doctoral thesis at Johns Hopkins University. The parties disagree, however, on the circumstances and implications of Nguyen's decision to take the leave. In any event, in June of 1992, after his four-month leave was almost over, Nguyen sought reinstatement at CNA as a Research Analyst. CNA denied his application for reinstatement.

Nguyen responded to this decision by filing suit against CNA on October 19, 1993. Nguyen alleges in Count I of his amended complaint that the company's employee manual, alone or in combination with other statements, created an implied employment contract pursuant to which CNA could only discharge him or refuse his return from a leave of absence for "just cause." Nguyen alternatively alleges in Count II that under a promissory estoppel theory of liability, CNA could not refuse Nguyen's request to return from leave.

The district court granted summary judgment in favor of CNA on both counts of the amended complaint. As to the implied contract theory in Count I, the district court ruled that CNA was entitled to summary judgment on two grounds. First, the district court held that the employee manual and other statements did not form the basis of an enforceable contract because the manual contained a valid disclaimer. Thus, as a matter of law, Nguyen was precluded from claiming that he had anything but an at-will employment relationship with CNA. Second, the district court ruled that even if the employee manual, alone or in combination with other written statements, otherwise transformed the employment relationship from one of at-will employment to one allowing termination for cause only, those writings did not meet the requirements of the Virginia statute of frauds. Because the district court ruled for CNA as a matter of law on Count I, it necessarily denied Nguyen's cross-motion for summary judgment as to liability on that same count. As to the promissory estoppel theory alleged in Count II, the district court additionally held that Nguyen's theory must fail as a matter of law because, even assuming Virginia had adopted the theory of promissory estoppel, there was no enforceable, definite and explicit promise. Finally, the district court held that the following motions were rendered moot by his earlier rulings: (1) Nguyen's cross-motion for summary judgment based solely upon Nguyen's contention that his requests for admissions were admitted by default when CNA was one day late in filing its responses; and, (2) Nguyen's apparent request, pursuant to Fed.R.Civ.P. 56(f), for more time in which to complete discovery before ruling on the motion for summary judgment. We review Nguyen's appeal from each of these rulings in turn.

## II.

We review the district court's grant of a motion for summary judgment *de novo. Lockhart v. United Mine Workers of America 1974 Pension Trust,* 5 F.3d 74, 77 (4th Cir.1993); *Miller v. FDIC,* 906 F.2d 972, 974 (4th Cir.1990). In conducting this review, we apply the same legal standards as the district court. *Ramos v. Southern Maryland Elect. Co–op., Inc.,* 996 F.2d 52, 53 (4th Cir.1993). The district court should only grant a motion for summary judgment where there is no

genuine dispute as to an issue of material fact, and the moving party is entitled to summary judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). As this Court recently summarized:

> The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A mere scintilla of evidence supporting the case is insufficient. *Id.*

*Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994). All reasonable inferences drawn from the evidence must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). And yet, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587, 106 S.Ct. at 1356. Finally, the district court's grant of summary judgment may be affirmed on different grounds than that on which the district court relied. *Keller v. Prince George's County*, 923 F.2d 30, 32 (4th Cir. 1991) (citing *Dandridge v. Williams*, 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 1156 n. 6, 25 L.Ed.2d 491 (1970)); *Farwell v. Un*, 902 F.2d 282, 283 (4th Cir.1990).

### A.

We turn first to the district court's grant of summary judgment for CNA on the implied contract theory contained in Count I. CNA maintains that an at-will employment relationship existed between itself and Nguyen, and, accordingly, the company was justified, as a matter of law, in denying Nguyen's request for return from leave. Nguyen maintains, however, that an employee manual distributed to him by CNA, as well as statements made to him by various CNA managers, transformed his at-will employment relationship into one in which CNA could only terminate or refuse a request for return from a leave of absence for cause and only after following certain procedures as specified in the manual. Nguyen further maintains that the facts surrounding this transformation into a for-cause termination relationship create material issues of fact precluding summary judgment and mandating reversal of the district court in this case. Applying choice of law rules of the state in which it sat, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941), the district court correctly determined that Virginia law governs the contract issues in this matter because the parties entered into the employment relationship (and, more specifically, the alleged implied contract) in Virginia. *Rossman v. State Farm Mut. Auto Ins. Co.*, 832 F.2d 282, 287 (4th Cir.1987) (applying Virginia law to determine that the substantive law of the state where the alleged contract at issue was made governs the dispute); *Woodson v. Celina Mut. Ins. Co.*, 211 Va. 423, 177 S.E.2d 610, 613 (1970) (same).

■ Virginia courts have strenuously adhered to the presumption of at-will employment. This adherence reflects the Virginia courts' reliance upon an underlying theory that stresses the freedom of contract:

> An employee is ordinarily at liberty to leave his employment for any reason or for no reason, upon giving reasonable notice, without incurring liability to his employer. Notions of fundamental fairness underlie the concept of mutuality which extends a corresponding freedom to the employer.

*Miller v. SEVAMP, Inc.*, 234 Va. 462, 362 S.E.2d 915, 917 (1987) (citing *Town of Vinton v. City of Roanoke*, 195 Va. 881, 80 S.E.2d 608 (1954)). Thus, where an employment relationship or contract is for an indefinite term, either party may terminate that relationship for any reason upon reasonable notice. *Graham v. Cent. Fidelity Bank*, 245 Va. 395, 428 S.E.2d 916, 917 (1993) (citation omitted).

■ Although a party may rebut the presumption of an at-will employment relationship "if sufficient evidence is produced to

show that the employment is for a definite, rather than an indefinite, term," *Progress Printing Co., Inc. v. Nichols*, 244 Va. 337, 421 S.E.2d 428, 429 (1992), the Supreme Court of Virginia has made clear that in order to show sufficient evidence of a definite term, "there must be absolute mutuality of engagement, so that each party has the right to hold the other to a positive agreement." *Miller*, 362 S.E.2d at 917 (quoting *Town of Vinton*, 80 S.E.2d at 617). Accordingly, the court is not to "imply a just cause provision where one is not *explicitly* provided." *Sullivan v. Snap–On Tools Corp.*, 708 F.Supp. 750, 752 (E.D.Va.1989) (emphasis added).[1] Finally, we note that where a plaintiff seeks damages under an implied contract theory, whether the at-will presumption has been rebutted is an issue of fact for the jury to decide when the evidence concerning the terms of a contract of employment is in conflict; however, the issue is one of law for the court to decide where there is no fair inference of a specific intended duration or the prerequisite consideration necessary to establish a for-cause employment relationship. *Miller*, 362 S.E.2d at 917–18.[2]

■ In this case, we confront a slightly different factual context than that typically seen in implied contract cases because Nguyen's complaint concerns not the typical termination from active duty as an employee, but instead the refusal to reinstate an employee following a leave of absence. Accordingly, we focus our attention specifically on those terms of the employee manual concerning leaves of absence. CNA maintains that there is no provision in the employee manual or any other written statements by CNA

officials that would lead a reasonable jury to find a for-cause termination relationship. Nguyen responds by focusing our attention on a number of provisions in the employee manual, but primarily on the following provision concerning return from a leave of absence: "The opportunity to return to work after a leave of absence depends on staffing requirements at the time. Reinstatement can not [sic] be guaranteed." (J.A. 679.) Nguyen argues that the first sentence of this provision rebuts the at-will presumption, at least for the purposes of a motion for summary judgment. Thus, according to Nguyen, CNA could refuse to rehire him following his leave of absence only in the event that there was inadequate staffing.

There are numerous problems with Nguyen's attempt to rely on the above-quoted provision as a means to rebut the at-will presumption. To begin, assuming that the second sentence did not exist, there would still be a great deal of uncertainty as to exactly what was indicated by "staffing requirements." This term could indicate that inadequate funding is the only reason CNA can refuse reinstatement to a person who had taken a leave of absence, as Nguyen maintains, or it could indicate a broader meaning that reinstatement may be declined for such factors as one's inability to meet the performance requirements of a particular position. We find that the isolated term does not give any "clear" indication that a for-cause termination relationship was created, especially when read in conjunction with the disclaimer in the next sentence: "Reinstatement can not [sic] be guaranteed." Precisely what Nguyen is trying to create in the first

---

**1.** Virginia courts have created two other possible grounds for rebutting the at-will presumption: public policy grounds or statutory grounds. *Progress Printing Co., Inc. v. Nichols*, 244 Va. 337, 421 S.E.2d 428, n. 1 (1992); *see also Lockhart v. Commonwealth Educ. Systems Corp.*, 247 Va. 98, 439 S.E.2d 328, 330–32 (1994) (against the public policy of Virginia to terminate individual based upon racial or sexual discrimination). Neither of these exceptions is implicated in this matter.

**2.** Nguyen would have us hold that under Virginia law, the issue of whether a particular employment relationship has rebutted the at-will presumption is functionally almost exclusively a

question for the jury. Although some states have, in fact, been more receptive in recent years to implied contract claims in this area of the law, *see, e.g., Nicosia v. Wakefern Food Corp.*, 136 N.J. 401, 643 A.2d 554, 560–61 (1994) (discussing New Jersey's multi-factor test for determining whether implied contract created); *Witkowski v. Thomas J. Lipton, Inc.*, 136 N.J. 385, 643 A.2d 546, 553–54 (1994) (implied contract claims tend to present questions of material fact precluding summary judgment), the Virginia courts have made no such shift. As we are bound by the present state of Virginia law, we decline Nguyen's invitation to broaden the implied contract theory in Virginia.

sentence—a guarantee of reinstatement—is revoked in the second sentence.

Furthermore, shifting our focus from the specific provisions concerning a leave of absence to the manual as a whole, another disclaimer contained in the first substantive provision in the employee manual also provides a basis for the district court's decision. This provision states:

110.1 GENERAL CONDITIONS OF EMPLOYMENT

The policies in this Personnel section are as specific as possible about various aspects of employment at CNA. *In general, CNA cannot guarantee or promise permanent employment; decisions about continued employment are solely the prerogative of CNA management.*

CNA Policy Manual § 110.1. (emphasis added) (J.A. 662).

This disclaimer provision in CNA's employee manual is very similar to one that the Supreme Court of Virginia approved as a means of defeating a for-cause termination argument as a matter of law. In *Miller,* the first of the "modern" employment at-will cases in Virginia, the Supreme Court of Virginia faced a situation in which the plaintiff contended that a representative of the employer made statements to her when she was hired that effectively rebutted the at-will presumption. However, the Court there ruled, as a matter of law, that a disclaimer in the employee manual stating that "[a]n employee may be dismissed at the *discretion* of the Executive Director" clearly negated any other provisions or attempts to rebut the at-will employment presumption that were either contained in the manual or made in separate statements to the former employee. *Miller,* 362 S.E.2d at 918 (emphasis added). In fact, in discussing the written disclaimer, the court held that a "clearer expression of intent to create at-will employment can hardly be imagined." *Id.* In short, we find little

difference between the disclaimer in *Miller* that an employee may be dismissed at the "discretion" of the employer and the disclaimer contained here that the employee may be dismissed "solely [at] the prerogative" of the employer.

Nguyen focuses our attention on a number of other statements made in the manual that might indicate a for-cause termination relationship. For instance, at one point the manual provides that CNA may terminate an employee for cause under certain circumstances and without fault under other circumstances, and that certain procedures must be followed before a for-cause termination may be completed. *See* CNA Policy Manual § 130.5 (J.A. 674–76.) The difficulty Nguyen faces under Virginia law, however, is that even where a statement in one part of an employment manual indicates for-cause termination only, a clear disclaimer in the manual—as we have held is present here— trumps contrary statements in the manual indicating for-cause termination. *Graham,* 428 S.E.2d at 918 (various conditions implying termination for-cause do not convert at-will employment to for-cause where manual expressly reserves the employer's right to terminate without cause). Accordingly, as a matter of law, the employee manual contains no language sufficient to give rise to a material issue over the formation of an implied contract rebutting the at-will presumption.[3]

Finally, the nature of the employment relationship between CNA and Nguyen also is not altered by a series of other written statements apart from the manual that Nguyen maintains are indications of a for-cause termination relationship. For example, Nguyen points to a performance appraisal in which one of Nguyen's superiors stated that "[t]he coming year will be a make-or-break year for Hung.... If Hung has another year of mixed reviews, I shall ask him to leave CNA." (J.A. 46, 49.) This statement is not material, however, because as the Supreme Court of Virginia has explicitly held, "[i]n the

---

**3.** Apart from those statements in the manual that Nguyen points to and that we have rejected as a basis for surviving CNA's motion for summary judgment, Nguyen also calls our attention to the following statement in the preface to the employee manual: "This manual establishes a uniform system for drafting, approving, and issuing CNA policies, which: ... [e]nsure CNA's compliance

with *legal authority* and *contractual obligations."* *See* Employee Manual, Preface. (J.A. 657.) Although Nguyen would have us conclude that this statement also somehow creates increased obligations on the part of CNA, we find that the statement simply begs the question of what the obligations are under the terms of the manual and the applicable legal authority.

absence of proof of a clear intent to do so, disciplinary letters should not be construed to convert at-will employment contracts into contracts for fixed periods." *Graham,* 428 S.E.2d at 918. The reason behind this rule is clear: "[o]therwise, employers would be loath [sic] to advise unsatisfactory employees of their deficiencies and thus give them an opportunity to improve." *Id.* As there is no indication in the record that the performance appraisal was anything more than a review indicating potential disciplinary action against Nguyen, it raises no disputed factual issue as to the nature of the employment relationship between CNA and Nguyen.[4]

Accordingly, none of the isolated statements pointed to by Nguyen in the employee manual and in other written statements made by CNA officials, whether alone or in combination with each other, raises a materi-

al issue of fact to support an implied contract of employment theory. In short, although some statements indicate certain procedural steps necessary before involuntarily terminating an employee, the disclaimers provided at the beginning of the manual and, more specifically, in the return from leave of absence provision itself defeat Nguyen's argument that there is a material issue of fact as to the nature of the employment relationship. Based upon Virginia decisions defining the contours of the at-will employment doctrine and the implied contract exception, we conclude that the district court properly granted CNA's motion for summary judgment as to Count I.[5]

### B.

■ We turn next to the district court's entry of summary judgment in favor of CNA

---

4. Other outside statements that Nguyen calls to our attention fare little better and require less attention due to their lack of merit. For example, Nguyen argues that CNA's president altered the nature of the employment relationship by sending a letter offering him a job as a Research Analyst that, according to Nguyen, "says that the first portion of Nguyen's employment will take 'two years,' followed by a 'field assignment.' " (Appellant's Brief at 30.) A closer look at the letter, however, clearly reflects the president's hopeful expressions—without certainty or promises—as to Nguyen's possible future with CNA:

> If you choose to join CNA, you will be assigned to a study in progress. This experience will enable you to develop expertise in a particular warfare area. Within about two years you *may* be given a field assignment where you can use your expertise in support of the operational Navy.

(J.A. 23) (emphasis added). The use of the term "may" when considered along with the context of the rest of the letter cannot form, on this record, the basis of a for-cause only termination relationship.

Likewise, Nguyen's reliance on a memorandum from one of his superiors, Mark Lewellyn, as a basis for continued employment after going on a leave of absence is not sufficient to rebut the at-will employment presumption. Nguyen focuses on a portion of the letter for the proposition that the memorandum "tells Nguyen that the only impediments to continued employment are 'uncertainty about CNA's budget and his poor showing in the Fall 1991 performance reviews.' " (Appellant's Brief at 30). Once again, however, a closer look at the entire sentence—let alone the entire paragraph—of the document in question tells a vastly different story:

> I have reviewed CNA's policy on leaves of absence with Hung, and he is aware that a

leave of absence involves what is for all intents and purposes a resignation from CNA. I have also discussed with Hung that uncertainty about CNA's budget and his poor showing in the Fall 1991 performance reviews mean that *there can be no guarantee that we will reinstate him at the end of his leave of absence.*

(J.A. 71.) This paragraph is clear and provides no basis for preventing the entry of summary judgment below in CNA's favor.

5. Because we find that the district court did not err in granting summary judgment for CNA on the basis that the various statements discussed did not form an implied contract, we need not reach the district court's alternative holding on Count I that the statute of frauds barred an implied contract that might have been formed from the employee manual or various statements. *Karsten v. Kaiser Found. Health Plan of Mid–Atl. States, Inc.,* 36 F.3d 8, 11 (4th Cir.1994) (cautioning against the use of alternative holdings). We do note, however, from our review of Virginia case law that the Virginia courts have, unlike many other states, strictly applied the statute of frauds to employee manuals. *Progress Printing Co.,* 421 S.E.2d at 430 ("[A] termination for cause provision used to overcome the presumption of employment at will must be in an employee manual or other document which complies with the statute of frauds."); *Falls v. Virginia State Bar,* 240 Va. 416, 397 S.E.2d 671, 673 (1990) (finding that the use of a company logo on the employee manual does not meet the statute of frauds's requirement that the document be "signed by the party to be charged"). The application of the statute of frauds to employee manuals and related statements provides one more example of the extent to which the Virginia courts have embraced the concept of at-will employment.

on Count II. Nguyen alleges that various statements CNA officials made to him concerning his return from a leave of absence form the basis of a promissory estoppel claim under Virginia law. CNA maintains that there is no genuine issue of material fact on two grounds: (1) Virginia does not recognize the promissory estoppel doctrine; and, (2) even if it did, the record provides no support for any of the necessary elements of a promissory estoppel claim.

CNA correctly asserts that Virginia courts have repeatedly refused to adopt the doctrine of promissory estoppel as part of Virginia's common law. *Stone Printing and Mfg. Co. v. Dogan,* 234 Va. 163, 360 S.E.2d 210, 212 (1987). However, we need not address whether the Supreme Court of Virginia would potentially adopt the promissory estoppel doctrine, as the facts in this case do not create a material issue of fact to take to a jury under such a theory. As we have previously stated, "promissory estoppel ... allows recovery even in the absence of consideration where reliance and change of position to the detriment of the promisee make it unconscionable not to enforce the promise." *Allen M. Campbell Co., Gen. Contractors, Inc. v. Virginia Metal Indus., Inc.,* 708 F.2d 930, 931 (4th Cir.1983); *see also Restatement (Second) of Contracts* § 90(1) (1981) ("A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.").

The United States Court of Appeals for the District of Columbia recently confronted a similar situation in which the plaintiff argued that the terms of the employee manual and other statements created either an implied contract and/or provided the basis of a promissory estoppel claim. *Choate v. TRW, Inc.,* 14 F.3d 74 (D.C.Cir.) (interpreting, in the alternative, the law of Virginia and the District of Columbia), *cert. denied,* — U.S. —, 114 S.Ct. 2710, 129 L.Ed.2d 837 (1994). In support of its holding that the district court did not err in granting summary judgment in favor of the employer on the implied contract theory, the D.C. Circuit turned to the promissory estoppel theory and determined that no basis in the record supported the existence of an estopping promise, a reasonable expectation on the part of the employee, or actual inducement required to reach the question of whether enforcing the promise would avoid injustice. *Id.* at 77–78. The court, therefore, held that the employee could not survive summary judgment because, even in a light most favorable to the employee, the evidence on record did not satisfy the following commonly cited definition of a promise:

> an expression of intention that the promisor will conduct himself in a specified way or bring about a specified result in the future, communicated in such a manner to a promisee that he may justly expect performance and may reasonably rely thereon.

*Id.* (quoting 1 *Corbin on Contracts* § 13 (1963)).

Like *Choate,* the facts in this case do not create a genuine issue of fact upon which a reasonable jury could find in Nguyen's favor. Nguyen argues primarily that the employee manual provision concerning "staffing requirements," as discussed earlier concerning Nguyen's implied contract theory, established a sufficient promise. And yet, for the same reasons that the provision fails to rebut the at-will employment presumption, the provision also fails to establish a promise upon which Nguyen could reasonably rely. Finally, to the extent that Nguyen might argue that the other statements, either individually or taken together, constitute an estoppable promise, we reject those arguments for the same reasons that we rejected them in Section II.–A: the statements fail to express a promise that one could reasonably expect to alter the at-will employment relationship between CNA and Nguyen. Accordingly, we conclude that the district court did not err in granting summary judgment in CNA's favor on the promissory estoppel claim.

### III.

█ Next, Nguyen argues that the district court erred in denying his request to continue CNA's motion for summary judgment

pursuant to Fed.R.Civ.P. 56(f).[6] As discussed earlier, the non-moving party on a motion for summary judgment may not sit idly by as the deadline to respond approaches; instead, the non-moving party must timely respond to the motion once the moving party has satisfied its initial burden. And yet, the requirement that the non-moving party respond specifically to a summary judgment motion is qualified by Rule 56(f)'s requirement that "summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson*, 477 U.S. at 250 n. 5, 106 S.Ct. at 2511 n. 5; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (noting that summary judgment is appropriate only "after adequate time for discovery"); *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 719 (4th Cir.1991) (same), *cert. denied*, ── U.S. ──, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992). The denial of a Rule 56(f) motion is reviewed under an abuse of discretion standard. *VISA Int'l Serv. Assoc. v. Bankcard Holders of America*, 784 F.2d 1472, 1475 (9th Cir.1986).

■ Although Nguyen cites numerous aspects of discovery that he believes were not properly completed at the time of the district court's decision on appeal, CNA correctly points out that Nguyen failed to file an affidavit with the district court specifying which aspects of discovery required more time to complete. As we have previously held, " '[a] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit.' " *Hayes v. North State Law Enforcement Officers Ass'n*, 10 F.3d 207, 215 (4th Cir.1993) (quoting *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1567 (Fed.Cir.1987)); *see also Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir.1994) ("[a] reference to Rule 56(f) and to the need for additional discovery in a memo-

randum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(f) affidavit . . . and the failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate"). Nguyen's brief on appeal offers numerous vague assertions as to matters upon which the district court should have allowed discovery to continue before deciding the motion for summary judgment on the merits. At no point, however, does Nguyen focus our attention on an affidavit presented to the district court that particularly specifies legitimate needs for further discovery. Accordingly, the district court did not abuse its discretion in denying Nguyen's motion for continuance pursuant to Rule 56(f).

### IV.

Finally, we consider Nguyen's argument concerning the district court's denial of Nguyen's cross-motion for summary judgment on Count I. Nguyen argues that the district court was obligated to admit as true, for the purposes of summary judgment, a number of requests for admissions which CNA was one day late in filing, pursuant to Fed.R.Civ.P. 36(a). As to the factual circumstances surrounding the late response, the parties agree that there was a snow storm on the day that the response was due. The parties disagree, however, as to the substance and implications of a number of conversations that took place on that day between the lawyers as to how to resolve the situation.

■ The district court's decision not to deem the requests for admission as admitted by CNA is reviewed for an abuse of discretion. *Warren v. International Bhd. of Teamsters*, 544 F.2d 334, 340 (8th Cir.1976). The text of Rule 36(a) is worth stressing:

> The matter is admitted *unless*, within 30 days after service of the request, *or within such shorter or longer time as the court may allow* . . . the party to whom the request is directed serves . . . a written answer. . . .

---

**6.** Fed.R.Civ.P. 56(f) states as follows:

**(f) When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essen-

tial to justify the party's opposition, the court may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or make such other order as is just.

*Id.* (emphasis added). Accordingly, the district court was left to consider whether CNA's response was permissibly filed one day late based upon the circumstances. Because the late response was so minimal in time and work on the date for responding was slowed by the snow storm, we conclude that the district court did not abuse its discretion in refusing to consider the requests for admission as admitted. Accordingly, we also affirm that portion of the district court's order denying Nguyen's cross-motion for partial summary judgment.

### V.

Despite underlying facts which are, at times, politically intriguing because they touch upon issues of national defense and may cast some jury sympathy with Nguyen, Nguyen must offer a viable legal theory that can withstand a motion for summary judgment before he can have a jury assess the facts of this case. Nguyen has failed to do so here. Accordingly, for the reasons stated above, we affirm the decision of the district court.

*AFFIRMED.*