Filed: July 14, 1998

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 97-1310
(CA-96-896-A)

Theodore S. Deeds, et al,

Plaintiffs - Appellants,

versus

County of Fairfax, Virginia,

Defendant - Appellee.

O R D E R

The court amends its opinion filed June 5, 1998, as follows:

On the cover page, section 7, line 2 -- counsel's name is corrected to read "Peter Donald Andreoli, Jr."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

UNPUBLISHED

# UNITED STATES COURT OF APPEALS

# FOR THE FOURTH CIRCUIT

THEODORE S. DEEDS; MARGARET A.
DEEDS,
Plaintiffs-Appellants,

v.

No. 97-1310

COUNTY OF FAIRFAX, VIRGINIA,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-96-896-A)

Argued: March 5, 1998

Decided: June 5, 1998

Before WILKINS and HAMILTON, Circuit Judges, and
BROADWATER, United States District Judge for the
Northern District of West Virginia,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED**: Richard E. Gardiner, Fairfax, Virginia, for Appellants.
Peter Donald Andreoli, Jr., Senior Assistant County Attorney, Fairfax,
Virginia, for Appellee. **ON BRIEF**: David P. Bobzien, County Attor-
ney, Robert Lyndon Howell, Deputy County Attorney, Fairfax, Vir-
ginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Theodore S. Deeds and Margaret A. Deeds (the Deeds) filed suit against the County of Fairfax, Virginia (the County), for alleged civil rights violations under Title 42, United States Code, Section 1983. The Deeds allege that the County caused the improper disclosure of their respective social security numbers in relation to their individual applications for concealed handgun permits pursuant to Virginia Code § 18.2-308. Specifically, the Deeds argue that the disclosures were made without informing the Deeds whether such was mandatory or voluntary, by what statutory or other authority the social security numbers were solicited, and as to what uses would be made of the social security numbers as required by Section 7(b) of the federal Privacy Act of 1974, P.L. 93-579.**1** The County filed a motion for summary judgment which the Deeds opposed. The district court granted summary judgment in favor of the County on the grounds that, as a matter of law, the County substantially complied with Section 7(b) and the disclosures of the social security numbers did not cause the damages the Deeds alleged. The Deeds appealed. We are of the opinion that the district court decided the summary judgment issues properly and, therefore, we affirm.

I.

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate if the

_____

**1** Section 7 of the Privacy Act of 1974, Pub. L. 93-579, appears as a note under 5 U.S.C. § 552a. Section 7 of Pub. L. 93-579 provided that:

> (b) Any Federal, State, or local government agency which requests an individual to disclose his social security account number shall inform that individual whether the disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited, and what uses will be made of it.

2

pleadings show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A district court's grant of summary judgment is reviewed de novo. Nguyen v. CNA Corp., 44 F.3d 234, 236-37 (4th Cir. 1995). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion to determine whether any material issues of fact exist for trial. Id. The facts are reiterated below.

II.

On July 3, 1995,[2] the Deeds appeared at the County's Public Safety Complex to begin the process of applying for a concealed handgun permit (CHP). The process required that the applicants complete FBI fingerprint cards and be photographed.[3] Anticipating a substantial number of applicants, the County arranged for the County's police personnel to aid in distributing the CHP applications promulgated by the Virginia Supreme Court, application instructions from the Virginia Supreme Court, and other informational documents relating to the application process. (J.A. at 240-241.) The Virginia Supreme Court application required an applicant to provide his or her social security number. The application instructed further that an applicant must attach a fingerprint card with data blanks completed. The fingerprint card also required the applicant's social security number. (J.A. at 13-16, 245.) The County's procedure included providing CHP applicants with additional information and instructional documents.[4]

_____

[2] Monday, July 3, 1995, was the first business day following the effective date of the 1995 amendments to Virginia Code § 18.2-308.

[3] The photograph of the applicant was necessary to ensure that the person who had applied and whose fingerprints had been taken was the same person who later picked up the CHP if issued. (Joint Appendix [J.A.] at 249, 253.)

[4] The CHP applicants were also provided the following: Filing Procedure for Concealed Handgun Permit (J.A. at 239.), Concealed Handgun Permit Application (J.A. at 247.), and another document prepared by the police department (J.A. at 248.).

3

Due to the numerosity of applicants, a temporary processing area was constructed outside the County Police Department Headquarters Annex. The application process was divided into stations manned by County personnel. Applicants were required to provide photo identification and complete the necessary paperwork at each station.

Near the end of the process, the CHP applicant was required to pose at the photography station for an identification picture which would accompany the CHP application. The County employee would write the applicant's name and social security number on an erasable, white marker board. Then, the applicant would stand with his or her back to the County's Annex building, facing outward toward the public, and hold the white marker board at chest level for the picture. Although the social security number was not identified as such on the marker board, the numbers were separated by hyphens in the typical social security number pattern.

As the 1995 CHP application process was newsworthy, there were a large number of photographers, video cameramen, reporters, and other members of the press present covering the activities at the County Annex. (J.A. at 74.) At some time during the completion of the process, the Deeds were photographed and interviewed by both newspaper media and television personnel. Mrs. Deeds' picture depicted her holding the board marked with her name and social security number. The Deeds' comments, statements, and pictures appeared in a <u>Washington Times</u> article the next day. However, the picture of Mrs. Deeds was published a second time in the July 17, 1995 edition of <u>U.S. News & World Report</u>.

III.

Subsequent to that publication, the Deeds brought suit under Section 7(b) of the Privacy Act of 174. Section 7(b) provides in pertinent part

> Any Federal, State, or local government agency which requests an individual to disclose his social security number shall inform that individual whether that disclosure is mandatory or voluntary, by what statutory authority or other

4

authority such number is solicited, and what uses will be made of it.

The Deeds allege that "as a result of the publication of the photograph in U.S. News & World Report, Mrs. Deeds' name and social security account number have been disclosed to the world."**5** The Deeds allege further that the County employees processing their CHP applications did not make the proper inquiries of them as required by the language of Section 7(b). The Deeds claim damages for injuries suffered, including mental anguish and emotional distress, and ask for combined compensatory damages of $101,000.00.

The County filed a motion for summary judgment on the grounds that Section 7(b) does not create a right, privilege, or immunity actionable under 42 U.S.C. § 1983 as to state or local governments. The County also argued that the Deeds were given notice of the necessity of their social security numbers in the instructional documents provided to them at the initial processing stations.

The district court noted that the United States Supreme Court has held that 42 U.S.C. § 1983 provides a cause of action for violations of federal statutes as well for violations of the Constitution. Maine v. Thiboutot, 448 U.S. 1, 4 (1980). A plaintiff alleging the violation of a federal statute will be permitted to sue under 42 U.S.C. § 1983 unless (1) the statute does not create enforceable rights, privileges, or immunities within the meaning of §1983, or (2)  Congress has foreclosed such enforcement of the statute in the enactment itself. Wilder v. Virginia Hospital Association, 496 U.S. 498, 508 (1990).**6**

Assuming without deciding that Section 7(b) creates a right, privilege, or immunity enforceable under § 1983, we conclude that the district court below was correct in finding that the County substantially complied with the terms of Section 7(b). Therefore, the district court appropriately granted summary judgment in favor of the County.

The instructions provided to the CHP applicants enforce the intent

_____

**5** Complaint, ¶ 12. (J.A. at 16C.)

**6** See Memorandum Opinion, p. 3. (J.A. at 218.)

5

behind the language of Section 7(b). The CHP application itself requires a social security number. Further, the application requires an applicant to affirm that the information provided is correct and complete. The FBI fingerprint card instructed that it needed complete information and required an applicant's social security number. The application was also thorough as it indicated under what Virginia code section it was promulgated, and as well, listed statutory disqualification criteria. The application informed CHP applicants that the court needed to consult with law enforcement officials and that it required a Central Criminal Records Exchange report before issuing a permit.

Considering the above as a whole, the information and instructions provided to each CHP applicant were sufficiently clear that the disclosure of a social security number was mandatory, the information was solicited pursuant to the Virginia Code, and informed the applicant that the social security number was necessary to complete a background check.

IV.

Upon consideration of the record, briefs, and oral argument, we affirm for those reasons adequately stated by the district court in its memorandum opinion, Theodore S. Deeds, et al. v. County of Fairfax, Va., No. 96-896 (E.D.Va. February 21, 1997).

AFFIRMED

6