# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Brenda V. Smith,**
**Plaintiff Below, Petitioner**

**FILED**

March 28, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 13-0752** (Jefferson County 12-C-178)

**Corporation of Harpers Ferry,**
**James Arthur Addy, and Shauna Johnstone,**
**Defendants Below, Respondents**


## MEMORANDUM DECISION

Petitioner Brenda V. Smith, by counsel Brett Offutt, appeals the order of the Circuit Court of Jefferson County, entered May 28, 2013, granting summary judgment in favor of respondents Corporation of Harpers Ferry, James Arthur Addy, and Shauna Johnstone. Respondents appear by counsel Jeffrey W. Molenda and Mikaela D. Torbert.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was a town clerk employed by respondent corporation. In that capacity, she was responsible for work related to water and sewage services. Her duties included billing customers, taking service requests, collecting bill payments, making bank deposits, and filing accounts receivable reports. Petitioner's collection duties required that she send generated form notices to customers who had not made timely payments, threatening discontinuation of services. Petitioner was terminated from her employment in April of 2011. She testified at her deposition that at the time of her termination, she had not generated the notices in approximately three to four months because the computer program that she used to do so had stopped working.

Respondent Johnstone, the director for administration and treasurer for respondent corporation, testified that prior to petitioner's termination, she requested reports of outstanding bills from petitioner on "numerous" occasions, but petitioner did not produce reports from May of 2010 through the time of her termination. Respondent Johnstone also testified that she overheard an argument between petitioner and Respondent Addy concerning a large unpaid water bill, and that argument prompted her to run the report herself.  Upon doing so, she determined that approximately $90,000 of uncollected water bills were outstanding or about 15

1

to 18% of the total charged services for that period.[1] Respondent Johnstone testified that petitioner's husband was among the customers with unpaid bills, at $5,841.57, as were Chad and Carrie Gauthier, at $6,045.15. Petitioner later was employed by the Gauthiers, and conceded that they were her friends.

Respondent corporation had a public official bond through surety Travelers Casualty and Surety Company of America. The policy appears to have been serviced by Commercial Insurance Services. Respondent Johnstone testified that she notified Mary Jo Mozingo of Commercial Insurance that money was unaccounted for, telling Ms. Mozingo that it could be the result of accounting error, misappropriation, negligence, failure to collect, or fraud. Ms. Mozingo then completed a "Property Loss Notice" form that indicated a misappropriation of funds had occurred. Respondent Johnstone later sent an e-mail to a representative at Travelers Insurance asking that Travelers not close its file on respondent corporation's claim because it would be filing a claim upon completion of a state audit to verify the loss. Respondent Johnstone later clarified by separate e-mail:

> We have just been informed that the WV State Fraud Auditors are finally coming to investigate the matter of [petitioner] and our loss of funds. I will send something concrete to tell you as soon as they begin their investigation. I am sorry for the delay in submitting the report in writing, however all I can tell you is that [petitioner] left, with cash missing as far as we could determine at the time amounting to upwards of $90,000. The auditors need to determine the precise amount and the means by which the funds became unaccounted for.

Respondent Addy testified he had no communications with Travelers; he was not asked about communications with Commercial Insurance.[2]

Respondent Johnstone completed, on May 20, 2011, a West Virginia Consolidated Retirement Board form entitled "'Less Than Honorable Service' Notification." In her deposition, Respondent Johnstone testified that this was the only form available to her to report petitioner's termination to the retirement board. She checked one box to indicate that no criminal complaint had been filed, and another to affirmatively answer the question, "Were larceny of funds or property from a state agency or political subdivision involved in this alleged crime?" However, Respondent Johnstone also provided the following detailed description of the circumstances: "Gross Negligence—Left owing her own water bill of $6,000 unpaid, allowed friends not to pay their water bills for which she was responsible. Under investigation by WV Auditor, Fraud Division."

Also in May of 2011, an article appeared in a publication called "The Spirit of Jefferson"

---

[1]According to information contained in the appendix record on appeal, the amount of money outstanding in uncollected water bills could have been as high as $150,000.

[2]No deposition transcript for any employee of Commercial Insurance or Travelers was included in the appendix record on appeal.

concerning the circumstances leading to petitioner's termination. Respondent Johnstone testified that she did not provide information for that article. It does not appear that Respondent Addy was asked about communication with "The Spirit of Jefferson."[3]

Petitioner filed a complaint in the Circuit Court of Jefferson County in May of 2012, asserting a cause of action for defamation. She did not contest her termination. Respondents filed a motion for summary judgment, which the court granted by order entered May 28, 2013. The court found that respondents did not make defamatory statements about petitioner, and that the subject communications were privileged. The court also found respondent corporation immune pursuant to West Virginia Code § 29-12A-4(b)(1) and West Virginia Code § 29-12A-5(a) (statutory immunity for political subdivisions). This appeal followed.

Pursuant to Rule 56(c) of the West Virginia Rules of Civil Procedure, summary judgment should be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). We accord a plenary review to the circuit court's order granting summary judgment: "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Finally, in considering a motion for summary judgment, we review all facts and inferences in the light most favorable to the nonmoving party. *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 59–60, 459 S.E.2d 329, 336–37 (1995).

On appeal, petitioner asserts five assignments of error. She argues that the circuit court erred in: (1) finding that all communications by the respondents to a third party regarding the petitioner were privileged; (2) finding that the respondents were immune from liability to the petitioner pursuant to West Virginia Code §§ 29-12A-4(b)(1), 5(a) and 5(b); (3) not considering all of the evidence when making factual determinations; (4) finding that punitive damages cannot be assessed against the individual respondents; and (5) granting a motion for summary judgment prior to the completion of discovery.

Petitioner first assigns error to the circuit court's finding that respondents' communications concerning petitioner's termination were privileged, a finding that defeated her defamation claim.[4] We have previously stated as follows:

---

[3]No deposition transcript for any representative of "The Spirit of Jefferson" was included in the appendix record on appeal.

[4]"The essential elements for a successful defamation action by a private individual are (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." Syl. Pt. 1, *Crump v. Beckley Newspapers, Inc.*, 173 W.Va. 699, 320 S.E.2d 70 (1984).

In syllabus point six of *Crump* [*v. Beckley Newspapers, Inc.*, 173 W.Va. 699, 320 S.E.2d 70 (1984)], this Court held that "'[t]he existence or nonexistence of a qualifiedly privileged occasion . . . in the absence of controversy as to the facts, [is a] question [ ] of law for the court.' Syl. pt. 3, *Swearingen v. Parkersburg Sentinel Co.*, 125 W.Va. 731, 26 S.E.2d 209 (1943)." 173 W.Va. at 703, 320 S.E.2d at 74.

This Court further explained as follows in syllabus point four of *Dzinglski v. Weirton Steel Corp.*, 191 W.Va. 278, 445 S.E.2d 219 (1994),

> Qualified privileges are based upon the public policy that true information be given whenever it is reasonably necessary for the protection of one's own interests, the interests of third persons or certain interests of the public. A qualified privilege exists when a person publishes a statement in good faith about a subject in which he has an interest or duty and limits the publication of the statement to those persons who have a legitimate interest in the subject matter; however, a bad motive will defeat a qualified privilege defense.

*Belcher v. Wal-Mart Stores, Inc.*, 211 W.Va. 712, 720, 568 S.E.2d 19, 27 (2002).

Petitioner's argument on this point is three-fold. She claims that there remains "considerable controversy" about the facts of this case, that "it was not established that the communications in question were made in good faith or without bad motive," and that there is a dispute about whether the individuals who received the communications had a "legitimate interest" in the subject matter.[5] We agree with the circuit court, however, that the facts relevant to the question of qualified privilege are not in dispute. Petitioner acknowledged that she did not send collection letters to delinquent customers for a period of three to four months, and there is no question that when Respondent Johnstone looked into the overdue accounts she found that petitioner's husband and friends had benefitted from petitioner's failure to collect. Certainly, it is not unreasonable for an employer in these circumstances to conclude that there is possible wrongdoing and take steps to minimize losses. A common step where losses are involved would include providing notice for an insurance carrier as required by an insurance carrier. Likewise, Respondent Johnstone testified that her job duties required that she report petitioner's termination to the Consolidated Public Retirement Board, and that the "less than honorable service" discharge notice was the only form available for her to do so. Petitioner has offered no

---

[5]Petitioner argues that she "believes" that Respondent Johnstone made false statements in retaliation for petitioner's having questioned Respondent Johnstone's abilities. To survive a motion for summary judgment, the party opposing summary judgment must satisfy the burden of proof "by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor. . . . The evidence illustrating the factual controversy cannot be conjectural or problematic." *Williams*, 194 W.Va. at 60, 459 S.E.2d at 337 (1995). Petitioner's "belief" does not satisfy the requirements of *Williams*.

evidence that Respondent Johnstone was untruthful about what transpired. Importantly, petitioner has presented no evidence of a bad motive on the part of any respondent.

Analysis of this argument overlaps to some degree with that of petitioner's third assignment of error, in which she asserts that the circuit court failed to consider evidence when making its findings of fact. Petitioner states, for example, that Respondent Johnstone lied by reporting to the retirement board that "larceny" was a factor in petitioner's termination. However, the circuit court adequately explained that Respondent Johnstone noted on the form the exact circumstances—that is, that petitioner had left her employment "leaving her own water bill unpaid" and had permitted friends not to pay their water bills, and that the matter had been referred to the State Auditor of West Virginia. Thus, Respondent Johnstone left little or no room for confusion in her completion of the form. Petitioner also takes exception to the circuit court's characterization of her husband's water bill as "her" water bill. Petitioner testified, though, that she and her husband lived together at the time, and she has offered no evidence that the circuit court's belief, if wrong, that she and her husband shared the bill was significant to the court's ruling.

Petitioner also disputes, through her own testimony, that the water bill of one of her friends—which had more than a $5,000 balance when discovered by respondents—was past due and required action by her at the time Respondent Addy inquired about it. Petitioner has presented no evidence that the remainder of the outstanding bills, the total amount of which was significant, were not in arrears. Last, petitioner states that "there is no evidence showing that [she] was under investigation by the State Auditor. However, Respondent Johnstone testified that she was accountable to the State Auditor. It thus would have been reasonable for her to inform the State Auditor of the discovery of missing funds. Moreover, petitioner has presented no evidence that she was not the subject of an inquiry by the State Auditor. We agree with the circuit court that there is no bona fide dispute about the material facts, and we conclude that the circuit court correctly determined that the communications attributable to respondents were privileged, and that respondents were entitled to summary judgment on the single claim in this lawsuit, defamation.[6]

Finally, we address petitioner's brief argument that the circuit court erred in granting summary judgment prior to the close of discovery. According to the docket sheet provided in the appendix record on appeal, the initial scheduling order was entered on June 19, 2012, and

---

[6]To the extent that petitioner maintains that the article about these events that appeared in "The Spirit of Jefferson" was defamatory, we note also that there is no evidence of communications between any respondent and anyone affiliated with that publication. Inasmuch as we have determined that the communications about which petitioner complains were privileged, thus defeating the defamation claim, we find it unnecessary to address petitioner's second assignment of error (that the circuit court erred in applying statutory immunity) or petitioner's fourth assignment of error (that the circuit court erred in finding that punitive damages were not available as to the individual defendants).

summary judgment was granted nearly a year later, on May 28, 2013.[7] The primary fact offered by petitioner in support of her argument is that the court granted summary judgment before she received transcripts of the depositions of three witnesses.

This Court has found as a general rule that summary judgment is appropriate only after the parties have had adequate time to conduct discovery, and that granting a motion for summary judgment before the completion of discovery is precipitous. *Board of Educ. of the Cnty. of Ohio v. Van Buren & Firestone, Architects, Inc.*, 165 W.Va. 140, 144, 267 S.E.2d 440, 443 (1980). However, in order to defeat a motion for summary judgment, the petitioner must rehabilitate the evidence attacked by the respondent; produce additional evidence showing the existence of a genuine issue for trial; or submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure. *See* Syl. Pt. 3, *Williams*, 194 W.Va. at 56, 459 S.E.2d at 333. *Williams* further provides as follows:

> [A] nonmoving party cannot avoid summary judgment merely by asserting that the moving party is lying. Rather, Rule 56 requires a nonmoving party to produce specific facts that cast doubt on a moving party's claims or raise significant issues of credibility. The nonmoving party is required to make this showing because he is the only one entitled to the benefit of all reasonable or justifiable inferences when confronted with a motion for summary judgment. Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuition or rumors.

194 W.Va. at 61 n.14, 459 S.E.2d at 338 n.14 (emphasis in original). Moreover, in *Crum v. Equity Inns, Inc.*, this Court stated that

> An opponent of a summary judgment motion requesting a continuance for further discovery need not follow the exact letter of Rule 56(f) of the West Virginia Rules of Civil Procedure in order to obtain it. *Elliott v. Schoolcraft*, 213 W.Va. at 73, 576 S.E.2d at 800. However, at a minimum, the party making an informal Rule 56(f) motion must satisfy four requirements. It should (1) articulate some plausible basis for the party's belief that specified "discoverable" material facts likely exist which have not yet become accessible to the party; (2) demonstrate some realistic prospect that the material facts can be obtained within a reasonable additional time period; (3) demonstrate that the material facts will, if obtained, suffice to engender an issue both genuine and material; and (4) demonstrate good cause for failure to have conducted the discovery earlier. *Id.*

224 W.Va. 246, 254, 685 S.E.2d 219, 227 (2009). Finally,

> [w]e, like the Fourth Circuit, place great weight on the Rule 56(f) affidavit, believing that "[a] party may not simply assert in its brief that discovery was

---

[7]Petitioner represents in her brief that discovery "commenced in this matter on August 24, 2014" when she served her first set of interrogatories and requests for production of documents.

necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in the affidavit." *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir.1995).

*Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.*, 196 W.Va. 692, 702, 474 S.E.2d 872, 882 (1996).[8]

In her brief before this Court, petitioner does not explain what information would have been added through the use of the additional deposition transcripts. Importantly, petitioner has offered no evidence that she completed the vital Rule 56(f) affidavit to explain to the circuit court her need for further discovery. In fact, petitioner's response to respondents' summary judgment motion below fails to indicate that she objected to the court's consideration of the summary judgment motion at that juncture.[9] For these reasons, we find no error in the timing of the circuit court's disposition.

For the foregoing reasons, we affirm.

Affirmed.

---

[8]Rule 56(f) of the West Virginia Rules of Civil Procedure states as follows:

> *When affidavits are unavailable*—Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

[9]The transcript of the summary judgment motion hearing was not included in the appendix record on appeal. In light of these factors, we decline to consider various testimony cited in plaintiff's brief that was not available to the circuit court when it considered the summary judgment motion, such as that of Carrie Gauthier. "[I]t is the parties' duty to make sure that evidence relevant to a judicial determination be placed in the record before the lower [tribunal] so that [it] may properly [be] consider[ed] . . . on appeal." *West Virginia Dep't. of Health and Human Res. ex rel. Wright v. Doris S.*, 197 W.Va. 489, 494 n.6, 475 S.E.2d 865, 870 n.6 (1996). *See also Pearson v. Pearson*, 200 W.Va. 139, 145 n.4, 488 S.E.2d 414, 420 n.4 (1997) ("This Court will not consider evidence which was not in the record before the circuit court."); *Powderidge Unit Owners Assoc.*, 196 W.Va. at 700, 474 S.E.2d at 880 (1996) ("[T]his Court for obvious reasons, will not consider evidence or arguments that were not presented to the circuit court for its consideration [.]").

**ISSUED:** March 28, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II