**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

EDDIE J. BONNER,
<u>Plaintiff-Appellant,</u>

v.                                                                          No. 97-2401

PAYLESS SHOE SOURCE,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-96-3283-PJM)

Submitted: March 24, 1998

Decided: April 14, 1998

Before MURNAGHAN and MOTZ, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Donald M. Temple, DONALD M. TEMPLE, P.C., Washington, D.C.,
for Appellant. Vincent H. Cohen, Harry T. Jones, Jr., William P.
Flanagan, HOGAN & HARTSON, L.L.P., Washington, D.C., for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Eddie J. Bonner appeals a district court order granting
summary judgment to the Defendant and dismissing his employment
discrimination complaint. In December 1996, Bonner filed an
amended complaint against Payless Shoe Source, Inc. ("PSS") under
Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e-2 (1994)
("Title VII") and 42 U.S.C. § 1981 (1994). Bonner, a black male,
alleged that he was subjected to a hostile work environment and
denied a promotion and equal compensation. On appeal, Bonner chal-
lenges the district court's findings. Finding no error, we affirm.

Bonner began working for PSS in 1985 in Cleveland, Ohio. In
1988, Tom Taylor, a white male and Bonner's direct supervisor, pro-
moted Bonner to manager. Taylor was transferred to the Washington,
D.C., area to become that area's district manager. Bonner sought and
received a transfer to that area after Taylor suggested that Bonner
could be promoted to training supervisor if he transferred. Bonner
was assigned a Washington, D.C. store to manage.

Soon after the transfer, the relationship between Bonner and Taylor
deteriorated. Bonner did not receive the salary he had anticipated. In
addition, Taylor reduced Bonner's payroll, forcing Bonner to work
more hours. Bonner believed Taylor was tampering with inventory
audits to place his store in a poorer light. Other black store managers
also believed Taylor was tampering with their audits as well. Taylor
hired white males to manage other stores at a higher salary than Bon-
ner's. At one point, there were two positions open for training super-
visors which were filled by two white males at Taylor's suggestion.*

_____

*Bonner was eventually promoted to training supervisor in February
1995, but was terminated in May 1995 for altering inventory records.

2

Taylor's interpersonal skills left much to be desired. Bonner heard Taylor use the word "nigger" on one occasion. Another black PSS employee stated that Taylor used that word "here and there." Taylor reported to a black employee that he had attended a Klu Klux Klan rally. At a managers' meeting, Taylor tapped Bonner's head with a pen to make a point regarding supervision. When Taylor was in Bonner's store, he would drop his pen on the floor to see if Bonner would pick it up. After another black employee reported Taylor's conduct regarding the manipulation of store audits, Taylor told a group of white and black managers that he could have them killed by a "crack head."

PSS had a written policy regarding harassment on the job and numerous avenues in which to report such harassment. However, Bonner never reported to management any instances of unwelcome conduct by Taylor. On one occasion in 1995, Bonner reported that Taylor had falsified a store audit. Two weeks later, after PSS investigated, Taylor was forced to resign.

We review a district court grant of a motion for summary judgment de novo. See Nguyen v. CNA Corp., 44 F.3d 234, 236-37 (4th Cir. 1995). A summary judgment motion should only be granted if there is no genuine dispute as to an issue of material fact and the moving party is entitled to judgment as a matter of law. Id. (citing Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248 (1986)). The district court must evaluate the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from the facts in that party's favor. See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Racial harassment which creates a "hostile work environment" is actionable under Title VII because it amounts to discrimination in the conditions of employment. See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 63-68 (1986); Katz v. Dole, 709 F.2d 251, 254 (4th Cir. 1983); see also 42 U.S.C. § 2000e-2(a)(1) (prohibiting an employer from discriminating "against any individual with respect to [the] . . . terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin"). To establish a hostile work environment claim, Bonner must prove that: (1) the conduct in question was unwelcome; (2) the harassment was based on

3

race; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) there is some basis for imposing liability on the employer. See White v. Federal Exp. Corp., 939 F.2d 157, 159-60 (4th Cir. 1991); Swentek v. USAir, Inc., 830 F.2d 552, 557 (4th Cir. 1987).

We agree with the district court that summary judgment was appropriate as to Bonner's hostile work environment claim. Not all harassment is actionable. Title VII was not intended to eliminate every instance of vulgarity, rudeness, or insensitivity. See Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 772-73 (4th Cir. 1997). When we construe the record in the light most favorable to him, we find the claim fails for various reasons. First, not all of the purported harassing incidents cited by Bonner were necessarily motivated by Bonner's race. See, e.g., Oncale v. Sundowner Offshore Servs., Inc., ___ U.S. ___, 1998 WL 88039, *3 (U.S. Mar. 4, 1998) (No. 96-568) (in terms of sexual harassment, "`the critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'") (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)). Second, the conduct he alleges was not severe or pervasive enough to support his claim that he worked in an objectively hostile work environment. Third, Bonner failed to show any reason to impose liability on PSS for Taylor's conduct.

The harassment is actionable only if it is so severe or pervasive to "alter the conditions of [the victim's] employment and create an abusive working environment." Vinson, 477 U.S. at 67 (internal quotation omitted) (alteration in original). In order to determine whether the conduct alleged by Bonner was sufficiently severe or pervasive to bring it within Title VII's purview, we must examine the totality of the circumstances, including "[t]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 22. The conduct at issue was neither frequent nor severe. Some of Taylor's actions were indeed humiliating. But for the most part, those actions occurred in isolation and were not continuous. In addition, there is no indication that Taylor's conduct unreasonably interfered with Bonner's performance.

4

An employer cannot be held liable for the conduct of its employees unless it knew or should have known of the harassing conduct and failed to take remedial action. See Andrade v. Mayfair Management, Inc., 88 F.3d 258, 262 (4th Cir. 1996). Bonner never reported the offensive conduct to management. When he did report Taylor's manipulation of store audits, PSS took quick and decisive action. Accordingly, we find the district court properly granted PSS's motion for summary judgment on this claim.

Turning our attention to Bonner's claim regarding the denial of a promotion, we find that even if Bonner established a prima facie case of discrimination, he failed to show that PSS's nondiscriminatory reason for its actions were pretextual. Absent direct evidence of discrimination, a plaintiff must first demonstrate a prima facie case of discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Once a party has made a prima facie case, the employer must provide a legitimate nondiscriminatory justification for its action. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). If the employer advances such a justification, the plaintiff must then prove that this justification is a mere pretext for an actual discriminatory motive. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993). A claim of disparate treatment in employment is analyzed in the same manner regardless of whether the claim is brought under Title VII or § 1981. See Mallory v. Booth Refrigeration Supply Co., 882 F.2d 908, 910 (4th Cir. 1989).

Even if Bonner proved a prima facie case of failure to promote, see Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994), PSS demonstrated a nondiscriminatory reason for promoting the white men over Bonner. Both men had more years of experience in managing shoe stores. In addition, both men successfully completed PSS's management seminar, something Bonner had yet to do. Successful completion of the management seminar was a prerequisite for the training supervisor position. We agree with the district court that Bonner failed to show that PSS's reason was pretextual. Thus, we find summary judgment was appropriately granted on this claim.

Bonner also claims that he was compensated less than a similarly situated white male. Specifically, Bonner alleges that a less experienced white male, Dan Holder, was compensated at a higher salary

5

than Bonner for the same position. Again, we find that Bonner has failed to rebut PSS's legitimate, nondiscriminatory reason for the difference in salary. See Kim v. Coppin State College, 662 F.2d 1055, 1061 (4th Cir. 1981). Holder had been a store manager for a competitor. PSS needed to pay him more in order to induce him to leave the competitor. Different skill levels and differences in prior training and experience may legitimately account for pay differentials. See Pouncy v. Prudential Ins. Co. of Am., 668 F.2d 795, 802 (5th Cir. 1982). Therefore, we find summary judgment was appropriately granted on this claim.

For the foregoing reasons, the judgment of the district court is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court, and oral argument would not aid in the decisional process.

AFFIRMED

6