Carolyn OLADOKUN

v.

GRAFTON SCHOOL, INC.

No. CIV.A. DKC 2001–0550.

United States District Court,
D. Maryland.

Jan. 24, 2002.

John J. Condliffe, Shub–Condliffe & Condliffe, P.A., Towson, MD, Mark D. Stave, Law Office, Towson, MD, for plaintiff.

John S. Vander Woude, Heather S. O'Connor, Eccleston and Wolf, Baltimore, MD, for defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this case brought under 42 U.S.C. §§ 2000–3 *et seq.* ("Title VII") and 42 U.S.C. § 1981 is the motion of Defendant Grafton School, Inc. ("Grafton") to dismiss for failure to state a claim or, in the alternative, for summary judgment on Plaintiff's claims for 1) discriminatory discharge and 2) hostile work environment discrimination[1]. The issues have been fully

---

1. This is one of several related claims by employees against Grafton, all of whom are represented by the same attorney. Monita Short, DKC 2000–223, and Deborah Briscoe, DKC 2001–548, settled. Before it settled, the Short case was consolidated for discovery purposes with Etta Nicole, DKC 2000–324, Franklin Daso, DKC 2000–658, and Susie Sonpon, DKC 2000–1914. Discovery was begun in those consolidated cases pursuant to a

January 3, 2001, scheduling order and was partially completed, including some depositions. There has been no formal discovery in this case or those of Kenneth Onuoha, DKC 2001–0393, and Samson Eruanga, DKC 2001–549. For reasons below, despite the lack of formal discovery in this case, summary judgment will be granted in Grafton's favor on Plaintiff's hostile work environment claim, as it will with respect to all the pend-

briefed and no hearing is deemed necessary. Local Rule 105.6. For reasons that follow, the court will grant in part and deny in part Grafton's motion for summary judgment.

## I. Background

The following facts are uncontroverted or, unless otherwise noted, set forth in the light most favorable to Plaintiff. Grafton is a private, non-profit Virginia corporation which operates group homes, schools and other facilities for intellectually and physically handicapped children. Paper no. 5, at 2, ex. A, at ¶ 4. Beginning in or about April, 1997, Plaintiff Carolyn Olądokun, a black Nigerian female resident of the United States, started working for Grafton, and, most recently, worked as an Overnight Residential Assistant. *Id.* Plaintiff was employed in that capacity until she was terminated by Grafton effective March 6, 2000. Paper no. 5, at 2, Ex. A, at ¶ 9.

Plaintiff's responsibilities as an Overnight Residential Assistant included providing for the safety and care of students in a residential facility during the night and monitoring the students throughout the night. *Id.*, at ¶ 7, Ex A–1. The "Official Job Description" provided by Grafton states that employees in this position are required to stay awake at all times during their assigned shifts. *Id.* Grafton contends that Plaintiff was discovered sleeping on a sofa during her shift on the night of February 23, 2000, by Sean Lore, her supervisor. Paper no. 5, at 2, Ex A, at ¶ 8, Ex. A–2, A–3. Plaintiff was terminated effective March 6, 2000, purportedly on the basis of the sleeping incident. *Id.*, Ex. A–4. In her sworn Montgomery County

"Complaint of Alleged Discrimination in Employment" ("Montgomery County complaint"), Plaintiff states that some time in 1999, Lore said to her, "I will get you niggers out of here." Paper no. 8, Ex. 7. Following Plaintiff's termination, her position was filled by Matt Putu, a black man of Liberian descent. Paper no. 5, at 2, Ex. A, at ¶¶ 10, 11.

On or about May 23, 2000, within 180 days of her termination, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) against Grafton. Complaint, at ¶ 7. On February 12, 2001, Plaintiff received a "right to sue" letter from the EEOC based on claims of employment discrimination under Title VII and deprivation of the right to make and enforce contracts under 42 U.S.C. § 1981. Complaint, at § 8. Plaintiff filed this suit promptly after receiving the "right to sue" letter.

In her complaint, Plaintiff asserts that she was discriminated against "regarding the terms and conditions of her employment on the basis of race . . . ." Complaint, at § 10. Grafton responded with the pending motion to dismiss or, in the alternative, for summary judgment, challenging the sufficiency of Plaintiff's claim, which it characterizes only as one for discriminatory discharge. In her brief opposing Grafton's motion, Plaintiff lays out the legal standard for hostile work environment and, while she does not do the same for discriminatory discharge, she implies that she would seek to challenge the veracity of Lore's contention that she was sleeping on the job. Additionally, Plaintiff attaches as evidence her Montgomery County com-

ing hostile work environment claims against Grafton. Ruling on summary judgment before discovery is completed is appropriate for two reasons. First, in her response to Grafton's motion, Plaintiff proffers the fruits of discovery from the consolidated cases. Second, because Plaintiff is called upon to provide evidence of her personal knowledge of incidents which affected her work environment at or around the time they occurred and such evidence could be provided by her own affidavit, she does not need discovery in order to be able to forecast sufficient evidence to support her claim, if it exists.

plaint, in which she stated that she was not sleeping and that her supervisor made a false accusation. Paper no. 8, Ex. 7. Also in support of her arguments, Plaintiff recites a timeline of alleged incidents occurring at Grafton between September 1998 and April 2000. Paper no. 8, at 3–5. With the exception of the alleged sleeping incident, only one of these other incidents involved Plaintiff. In her April, 2000 Montgomery County Complaint, Plaintiff stated that Lore, Plaintiff's supervisor, is alleged to have said to her in 1999, "I will get you niggers out of here". *Id.*, Ex. 7. In addition, Plaintiff stated in the Montgomery County complaint that Lore used the word "nigger" on one other occasion in reference to a co-worker. However, there is no evidence that Plaintiff was present during or even had knowledge at or around the time of this second incident or any of the other incidents alleged in the timeline.

In its reply to Plaintiff's opposition, Grafton contends for the first time that Plaintiff is attempting improperly to bring the claim for hostile work environment discrimination. Additionally, while Grafton reiterates its opposition to the substance of Plaintiff's discriminatory discharge claim, it argues that Plaintiff was abandoning that claim because she allegedly did not address it in her opposition brief. Finally, Grafton argues for the first time in its reply that, even if the hostile work environment claim was pled properly in the complaint, it should be dismissed for failure to exhaust administrative remedies because it was not in Plaintiff's EEOC complaint.

## II. Standards of Review

■■■■ Defendant has moved for dismissal, or, in the alternative, for summary judgment. Both parties have submitted material outside the pleadings so the appropriate standard for analyzing Plaintiff's claims is that for summary judgment. While Plaintiff requests in her response that a ruling on Grafton's motion be withheld until discovery is completed (Paper no. 8, at 5), she has not filed an affidavit under Fed.R.Civ.P. 56(f) opposing summary judgment on the grounds that information necessary for her opposition is unavailable or more discovery is necessary.[2] " '[A] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit.' " *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995), *quoting Hayes v. North State Law Enforcement Officers Ass'n*, 10 F.3d 207, 215 (4th Cir.1993) (internal quotations omitted). Thus, it is insufficient for Plaintiff merely to lament the lack of discovery where she "does not focus our attention on an affidavit presented to the district court that particularly specifies legitimate needs for further discovery." *Nguyen*, 44 F.3d at 242. Though the court proceeds with due caution when considering a motion for summary judgment before discovery is completed, here Plaintiff not only has access to the fruits of discovery in the related cases against Grafton, but the evidence needed to support her hostile work environment claim, if it exists, is within her personal knowledge. Given the lack of appropriate affidavits demonstrating specific need for discovery, the court will not

---

**2.** Fed.R.Civ.P. 56(f) states: "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

delay consideration of the motion in order to await more discovery.

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v. Rollins·Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir.1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judg-

ment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. In *Celotex Corp.*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.*, 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd*, 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

## III. Analysis

 Title VII of the Civil Rights Act of 1964 provides that an employer shall not "fail or refuse to hire or discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Section 1981(a) states in pertinent part that: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts... as is enjoyed by white citizens...." Because the "at-will employment relationship is contractual... such relationships may therefore serve as predicate contracts for § 1981 claims." *Spriggs v. Diamond Auto Glass II*, 242 F.3d 179, 183 (4th Cir.2001), *quoting Spriggs v. Diamond Auto Glass I*, 165 F.3d 1015, 1018–1019 (4th Cir.1999). In *Spriggs*, the plaintiff brought the same allegations under both Title VII and § 1981 and the court applied the same analysis to the claims under both statutes. The court will treat the claims as identical here as well.

### A. Discriminatory Discharge

Plaintiff can satisfy her burden of proof for the discriminatory discharge claim either by direct proof of discriminatory intent, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), or through the indirect, burden-shifting method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ In its motion, Grafton only addresses the sufficiency of Plaintiff's evidence from the standpoint of the *McDonnell Douglas* pretext test. While Grafton argues that Plaintiff would fail to satisfy the third and fourth elements needed to make out a *prima facie* case of discrimination under *McDonnell Douglas*, "[t]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Thurston*, 469

U.S. at 121, 105 S.Ct. 613. The burden shifting formula of *McDonnell Douglas* is designed to allow a plaintiff to use circumstantial evidence to make out a *prima facie* case only in the absence of direct evidence. *Id.* Because Plaintiff offers direct evidence of discriminatory intent, the court must examine Plaintiff's proffered evidence to determine whether it is sufficiently direct to prove discriminatory discharge.

■ In her Montgomery County complaint, in April 2000, Plaintiff alleged that Lore, Plaintiff's supervisor, told her "last year", i.e. in 1999, "I will get you niggers out of here." Paper no. 8, Ex. 7. "Derogatory remarks may in some instances constitute direct evidence of discrimination." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 608 (4th Cir. 1999), *citing O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 548 (4th Cir.1995), *rev'd in part on other grounds*, 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). However, all offensive language is not direct evidence. "[T]o prove discriminatory animus, the derogatory remark cannot be stray or isolated and 'unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of discrimination.'" *Id.*, *quoting McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 686 (7th Cir.1991) (internal citations omitted). In other words, there has to be a nexus between the offensive remark and Plaintiff's eventual termination for that remark to comprise direct evidence of discriminatory discharge. Plaintiff must present, "'direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion.'" *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir.1995), *quoting Price Waterhouse*, 490 U.S. at 277, 109 S.Ct. 1775 (O'Connor, J., concurring). The evidence must be, "of conduct or state-

ments that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Id.*

Plaintiff does not specify how long before Lore recommended her termination he allegedly made his statement, but it was some time in 1999, between two months and fourteen months before the alleged sleeping incident. Paper no. 8, Ex. 7. An eighteen month lag in time between derogatory statements and termination . was one of the factors in *Brinkley* which led that court to find that there was not a sufficient nexus between derogatory statements and an employee's termination. However, there were several other factors in that case which made the connection between the remarks and the plaintiff's termination more attenuated than in the present case, notably that in the interim between hearing the derogatory remarks of the plaintiff's coworker and terminating plaintiff, the employer's Board of Trustees promoted the plaintiff *Brinkley*, 180 F.3d at 608–609. While it does not appear from the evidence that Lore was the final decisionmaker who terminated Plaintiff and there was at least some lag between his remark and Plaintiff's termination, Lore's statement to Plaintiff has a nexus with her eventual termination in two significant ways. First, rather than merely an offensive remark, the precise wording of Lore's statement indicates an intent to remove Plaintiff from her job based on his discriminatory attitude. According to Plaintiff's statement, Lore not only referred to at least some of the black workers at Grafton as "niggers," he said he would "get [them] out of here." Paper no. 8, Ex. 7. Second, while Lore was not the final decisionmaker regarding Plaintiff's employment status, he did recommend her termination (Paper no. 8, Ex. 6) and his report that Plaintiff was sleeping on the job, which she disputes, served as the sole basis for her termination. Paper no. 5, Ex. A–3.

Taken together, these two factors give Lore's statement a sufficient relationship with the discharge decision so as to make it direct evidence of discriminatory discharge. Accordingly, Grafton's motion for summary judgment on the discriminatory discharge claim is denied.

### B. Hostile Work Environment

#### 1. Preliminary challenges

Grafton addresses Plaintiff's hostile work environment claim for the first time in its reply to Plaintiff's opposition (Paper no. 9) and raises two preliminary challenges which the court must consider before moving to the summary judgment analysis. First, Grafton alleges that Plaintiff only set forth the hostile work environment claim in her opposition to Grafton's motion to dismiss and did not include it in the complaint. In the alternative, Grafton argues that Plaintiff's hostile work environment claim should be dismissed for failure to exhaust administrative remedies because she did not raise it in her EEOC complaint. The court considers these challenges in turn.

Plaintiff stated in the Complaint at ¶ 10:

> ...Defendant engaged in discriminatory practices against Plaintiff regarding the terms and conditions of her employment on the basis of race, including but not limited to, engaging in a pattern and practice of humiliation and harassment of Plaintiff; allowing hostile racial slurs and comments by Defendant's white employees to occur without consequence...

The federal rules call for "notice pleading," so the standard for stating a claim is not rigorous. "Under the liberal pleading requirements of the Federal Rules of Civil Procedure, it is not necessary for a plaintiff to set out in detail the facts upon which her claim is based." *Karpel v. Inova*

*Health System Servs.*, 134 F.3d 1222, 1227 (4th Cir.1998). Although, "... a plaintiff 'must at least set forth enough details so as to provide defendant and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery,'" *Id., quoting Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 466 (9th Cir.1990), Plaintiff's complaint satisfies this standard. Though stated inartfully, language in the Complaint alleging discrimination on the basis of race in the form of humiliation, harassment and racial slurs gives Grafton a fair idea of the basis of Plaintiff's complaint.[3] Accordingly, the court will not dismiss Plaintiff's hostile work environment claim on the ground that she failed properly to plead it.

■■■■■ Grafton argues in the alternative that Plaintiff's hostile work environment claim should be .dismissed because it was not included in Plaintiff's EEOC complaint. This argument that the claim should be dismissed because of failure to exhaust administrative remedies is governed by Fed.R.Civ.P. 12(b)(1). A Title VII litigant, "...may not litigate allegations of discrimination which are neither stated in the original charge nor investigated by the EEOC...", *Pritchett v. General Motors Corp.*, 650 F.Supp. 758, 761–762 (D.Md.1986). Although Plaintiff does not provide her EEOC complaint as evidence and her Montgomery County complaint only arguably included a hostile work environment claim, the court cannot now consider Grafton's exhaustion argument. Whether or not this argument would be valid, because Grafton did not bring it in its motion, Plaintiff was not challenged to bring forth evidence that her

EEOC complaint encompassed the hostile work environment claim. Therefore, it is improper to consider it now.

2. Summary Judgment Motion

Plaintiff was challenged to provide evidence to support the allegations in her complaint. While Plaintiff has set forth a timeline of incidents, some with evidentiary support in her Montgomery County complaint, the evidence is too little.

■■■■ The Fourth Circuit stated the test for a hostile work environment claim in *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir.1998), *citing Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 772 (4th Cir.1997):

> To state a claim for hostile work environment, [the plaintiff] must show that: (1) the harassment was unwelcome; (2) the harassment was based on his race or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer.

In that case, while the Fourth Circuit did not agree with all of the district court's conclusions, it upheld the grant of summary judgment for the defendant on the plaintiff's hostile work environment claim because there were only conclusory and unspecific allegations that the incidents complained of by the plaintiff resulted from animosity based on the plaintiff's race or age. *Id.*, at 801–802.

■■■■ In order to support a claim for hostile work environment, the alleged conduct must not only "create an objectively hostile or abusive work environment, [but

---

**3.** A case argued recently in the Supreme Court presents the question of the specificity of allegations required to state a claim of job discrimination based on age or national origin. *Swierkiewicz v. Sorema*, 5 Fed.Appx. 63 (2nd Cir.2001), *cert. granted,* —— U.S. ——,

122 S.Ct. 23, 150 L.Ed.2d 805 (2001), *oral argument scheduled,* 70 USLW 3391 (January 15, 2002). This decision could result in a demand for greater specificity in pleading in Title VII cases.

the] victim must also perceive the environment to be abusive." *Spriggs,* 242 F.3d at 184 (internal citations omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To determine whether the harassment was pervasive enough to render the work environment objectively abusive:

> ... the court looks to all the surrounding circumstances including "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating or a mere offensive utterance; and (4) whether it unreasonably interferes with [the] employee's work performance."

*Talley v. Farrell,* 156 F.Supp.2d 534, 541 (D.Md.2001), *quoting Smith v. First Union Nat. Bank,* 202 F.3d 234, 242 (4th Cir.2000) (internal citations omitted).

█ In trying to establish her claim, Plaintiff lists a timeline of events that occurred at the school which, she contends, support her claim of a hostile work environment. Paper no. 8, at 3–5. However, Grafton contends that the objective prong of the hostile work environment test cannot be met because only one of the incidents was directed at Plaintiff and she makes no allegation that she knew of any of the other alleged incidents in her timeline at or around the time they occurred. Paper no. 9, at 6.

The two incidents in which Plaintiff's supervisor, Sean Lore, allegedly used the word "nigger", once directed at Plaintiff and another time at Plaintiff's co-worker, are the most troubling as far as creating a hostile work environment. While several of the incidents related in the timeline lack evidentiary support, Plaintiff provides her sworn statement in her Montgomery County Complaint as support for these two incidents. In that complaint, Plaintiff alleged that Sean Lore, her supervisor, told her, "I will get you niggers out of here." Paper no. 8, at 3, ex. 7. Also in her Montgomery County complaint, Plaintiff stated that Lore said to a client in the presence of a co-worker, "Don't slobber on me, slobber on that black nigger over there," referring to a co-worker. *Id.* There is no evidence that she knew of this second statement at or around the time it occurred or even while she was working at Grafton. The word "nigger" is more than the "mere offensive utterance" listed as the third factor in the test. No word in the English language is as odious or loaded with as terrible a history. "Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates." *Rodgers v. Western–Southern Life Ins. Co.,* 12 F.3d 668, 675 (7th Cir. 1993) (citation and internal quotation marks omitted).

Even if taken together, however, use of this language by the supervisor is not sufficient to satisfy the hostile work environment test because it is not sufficiently pervasive. While the first statement was used in Plaintiff's presence and directed at her, courts have upheld hostile work environment claims based on the use of similar and "other racially abusive language" where that use, "was repeated, continuous and prolonged despite [the plaintiff's] objections..." *Walker v. Ford Motor Co.,* 684 F.2d 1355, 1359 (11th Cir.1982). In *Spriggs,* another case involving the use of the word "nigger" by a supervisor, "[The defendant's] frequent and highly repugnant insults were sufficiently severe or pervasive (or both) to cause a person of ordinary sensibilities to perceive that the work atmosphere at the Forestville store was racially hostile." *Spriggs,* 242 F.3d at

185. Therefore, Lore's first statement, though highly repugnant, does not, taken alone, satisfy the test for a hostile work environment. It is necessary to look to Lore's second alleged statement in conjunction with the first to determine whether the offensive language was sufficiently pervasive.

■ In *Spriggs*, not only the highly repugnant nature of the comments, but their frequency and the fact that they were directed at the plaintiff, led the court to conclude that a reasonable jury could find that a hostile work environment existed. *Spriggs*, 242 F.3d at 185. While there is evidence that the first statement was not only made in Plaintiff's presence, but directed at her, according to her Montgomery County complaint, Plaintiff did not hear the second alleged statement herself. Furthermore, there is no allegation that the second statement was directed at Plaintiff or even that she knew of it at or around the time it was made. The fact that the statement was not directed at Plaintiff does not render it irrelevant for the purposes of establishing a hostile work environment. Conduct targeted at persons other than Plaintiff may be considered in support of a hostile work environment claim because, "[w]e are, after all, concerned with the 'environment' of workplace hostility, and whatever the contours of one's environment, they surely may exceed the individual dynamic between the complainant and his supervisor." *Spriggs*, 242 F.3d at 184, *citing Walker*, 684 F.2d at 1359 n. 2. However, in *Walker*, one of the critical factors cited by the court in finding that epithets not directed at the plaintiff affected his work environment was that, "[t]he offensive language was often used in [his] presence." *Walker*, 684 F.2d at 1359 n. 2. Here, Plaintiff fails to establish a linkage between the second statement and her work environment because she does not even allege that she was aware of that statement while she worked at Grafton.

Although the language allegedly used by Lore to his subordinates, if true, is despicable and rises above the level of mere utterances, it is insufficient to establish a hostile work environment because there is not sufficient evidence that it affected her work environment. Therefore, Plaintiff's claim does not meet the objective test described in *Spriggs*. Accordingly, Grafton's motion for summary judgment will be granted as to Plaintiff's claim for hostile work environment discrimination.

## IV. Conclusion

Plaintiff forecasts sufficient direct evidence to support her claim for discriminatory discharge. However, Plaintiff fails to satisfy the standard for hostile work environment discrimination. Accordingly, the court will deny Grafton's motion for summary judgment as to Plaintiff's discriminatory discharge claims under Title VII and § 1981, but grant Grafton's motion for summary judgment as to Plaintiff's hostile work environment claims.